[Cite as *Mezey v. Ohio Dev. Servs. Agency*, 2016-Ohio-8578.]

GAIL MEZEY

      Plaintiff

      v.

OHIO DEVELOPMENT SERVICES
AGENCY

      Defendant

Case No. 2015-00110

Judge Patrick M. McGrath

<u>DECISION</u>

**{¶1}** Before the court are objections filed by plaintiff Gail Mezey on October 4, 2016 to Magistrate Anderson M. Renick's decision of September 20, 2016. In his decision, Magistrate Renick determined that Mezey failed to prove claims of wrongful termination in violation of public policy and promissory estoppel after defendant Ohio Development Services Agency (ODSA) terminated Mezey's employment. Mezey objects to Magistrate Renick's factual findings supporting his determination that she did not prove her claim of wrongful discharge in violation of public policy and his conclusions drawn from the disputed factual findings. She does not object to Magistrate Renick's recommended decision directed to her promissory-estoppel claim.

**{¶2}** Under the Ohio Rules of Civil Procedure, in ruling on objections to a magistrate's decision, a court is required to undertake an independent review as to the objected matters to determine whether a magistrate has properly determined the factual issues and appropriately applied the law. Because the court determines that, upon independent review, the magistrate has properly determined the factual issues and appropriately applied the law related to Mezey's claim of wrongful termination in violation of public policy, the court concludes that judgment in favor of ODSA should be entered.

## I. Background

{¶3} Mezey represents that in 2011, after two employees left the Film Bureau, a branch of the Ohio Office of Travel and Tourism in what was formerly the Ohio Department of Development, she "agreed to come in and work on a temporary, 'intermittent' basis * * * to assist with the transition to new, permanent staff (or until senior managers 'figured out what they wanted to do' * * *)."  (Objections at 2.) According to Mezey, she "was asked to go to 40 hours per week" in May 2011, and she "later was asked to reduce her hours to 32 per week" in September 2011, but "within a few months she was again working 40 hours most weeks because of the workload." (Objections at 3.)  Mezey indicates that, after "the first few months of her work at the Film Office," she "began to discuss with each of her successive supervisors and with upper management at the agency the question of her claimed status as an 'intermittent' employee" after she had taken on increased hours and responsibilities.  (Objections at 7.)  Mezey represents that in the summer of 2013 she consulted an attorney who sent a demand letter dated June 11, 2013 to ODSA's director (David Goodman), requesting that her employment status be changed to "full-time/permanent" and seeking "a measure of back pay" for the period that she had been treated as an intermittent employee.  (Objections at 9.)  Mezey maintains that subsequently she began to receive a "chilly reception" from management employees and supervisors.  (Objections at 9.) According to Mezey, she was told to keep her hours to "approximately 19 per week, or 1000 per year, in June of 2013" and, except for a week, she complied with the instruction.  (Objections at 10.)  Mezey represents that in August 2013 when she arrived at a meeting that she requested, she was "summarily discharged."  (Objections at 10.)

{¶4} On February 12, 2015, Mezey sued ODSA in this court, asserting three "counts": (1) "Violation of Public Policy," (2) "Promissory Estoppel," and (3) "Violation of Ohio Law."  The court referred the cause to mediation and, in accordance with Civ.R. 53, it also appointed Magistrate Anderson Renick without limitation of authority specified

in Civ.R. 53(C).  After the court learned that mediation did not resolve the case, ODSA moved to dismiss Mezey's complaint.  Magistrate Renick issued an order granting ODSA's motion in part and dismissing Mezey's third "count"—"Violation of Ohio Law." He ordered the case to be set for trial in the normal course.

{¶5} The matter proceeded to trial before Magistrate Renick as to Mezey's claims of a "violation of public policy" and "promissory estoppel."  On September 20, 2016, Magistrate Renick issued a decision wherein he determined that Mezey failed to prove by a preponderance of the evidence her claims of wrongful discharge in violation of public policy and promissory estoppel.  In his decision, Magistrate Renick recommended that judgment be rendered in favor of ODSA.

{¶6} On October 4, 2016, Mezey filed objections to Magistrate Renick's decision related to his determination of her claim of wrongful discharge in violation of public policy.

{¶7} ODSA has not filed any objections to Magistrate Renick's decision.

## II. <u>Plaintiff's Objections to the Magistrate's Decision</u>

{¶8} In her objections, Mezey disputes the magistrate's factual findings pertaining to her wrongful discharge in violation of public policy claim.  Mezey contends that the magistrate "erred in the factual findings that led to his conclusion that Plaintiff had not met her burden of proof on this claim."  (Objections at 12.)  Mezey "submits that the Magistrate erred in concluding that the decision-maker who discharged Ms. Mezey was unaware of her having consulted with an attorney and that there were legitimate, non-retaliatory reasons for her termination."  (Objections at 1.)  Mezey states: "The Plaintiff respectfully submits that these findings are not supported by the clear weight of the evidence.  To the contrary, the evidence showed that Ms. Tolan *was* aware of Ms. Mezey having sought legal advice and that the stated reasons for her termination were inaccurate or actually false."  (Emphasis sic.) (Objections at 11.)

{¶9} In her objections, Mezey asserts:

a. "First, Ms. Tolan's direct testimony that she did not know about Ms. Mezey's legal claims is undermined by the contents of a letter from DSA's own counsel." (Objections at 12.)

b. "Second, the evidence showed that in fact the stated reasons given by Ms. Tolan for discharging Ms. Mezey – that they did not share the same 'vision' for the Film Office and that Ms. Mezey was engaged in 'kingdom building' by focusing on activities she was interested in rather than the tax credit administration – were pretextual. The actual reason therefore must have been her consulting with an attorney and attempting to assert legal claims relating to her employment." (Objections at 14.) Mezey claims that trial testimony rebuts allegations that she disobeyed instructions about her work hours, made unapproved trips, failed to work with other arms of the agency, and disseminated poor-quality written materials.

For purposes of review, the court labels Mezey's claims as "Objection No. 1," and "Objection No. 2."

### III. Law and Analysis

### A. Mezey's objections are timely filed but her objections to the magistrate's factual findings are not supported by a transcript of all the evidence submitted to the magistrate relevant to her objections or an affidavit of that evidence.

{¶10} Civ.R. 53(D)(3)(b) pertains to objections to a magistrate's decision. Pursuant to Civ.R. 53(D)(3)(b)(i), "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed." Civ.R. 53(D)(3)(b)(ii) provides, "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." According to Civ.R. 53(D)(3)(b)(iii):

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

{¶11} Here, Mezey filed her written objections on October 4, 2016—fourteen days after the magistrate issued his decision on September 20, 2016. The court finds that Mezey's written objections are timely filed in accordance with Civ.R. 53(D)(3)(b)(i).

{¶12} Additionally, the court finds that Mezey has not filed a transcript of all the evidence submitted to the magistrate relevant to her challenges to the magistrate's factual findings within thirty days after the filing of her objections. And the court finds that Mezey has not sought leave of court to extend the time for the filing of a transcript. Neither has Mezey filed an affidavit of the evidence relevant to her challenges to the magistrate's factual findings because a transcript is unavailable within thirty days after the filing of her objections. The court further finds that Mezey has not sought leave of court related to an alternative technology or manner of reviewing relevant evidence.

**B. Because Mezey has not filed a transcript of all the evidence submitted to the magistrate relevant to her objections or an affidavit of that evidence, the court is required to accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions.**

{¶13} Civ.R. 53(D)(4)(d) establishes what a trial court is required to do if a party timely files one or more objections. It provides: "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that

the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." According to Civ.R. 53(D)(4)(a), a magistrate's decision "is not effective unless adopted by the court."

{¶14} In *Siegel v. State*, 2015-Ohio-441, 28 N.E.3d 612, ¶ 12 (10th Dist.) the Tenth District Court of Appeals discussed the standard that applies to this court's review of a magistrate's determination, stating:

> "A magistrate is an arm of the court, not a separate judicial entity with independent judicial authority and duties." *State ex rel. DeWine v. Ashworth*, 4th Dist. No. 11CA16, 2012-Ohio-5632, ¶ 38. The Court of Claims still must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). The court retains the ultimate authority and responsibility over the magistrate's findings and rulings. *Hartt v. Munobe*, 67 Ohio St.3d 3, 5-6, 1993 Ohio 177, 615 N.E.2d 617 (1993). * * *.

{¶15} Notably, the Tenth District Court of Appeals has repeatedly determined, that if an objecting party fails to submit a transcript or affidavit of evidence, a trial court is required to accept a magistrate's factual findings and limit its review to the magistrate's legal conclusions. *See Law Offices of James P. Connors v. Cohn*, 10th Dist. Franklin No. 08AP-1031, 2009-Ohio-3228, ¶ 23 ("If an objecting party fails to submit a transcript or affidavit, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions"); *Ross v. Cockburn*, 10th Dist. Franklin No. 07AP-967, 2008-Ohio-3522, ¶ 5 ("In the absence of a transcript or an affidavit, the trial court is required to accept the magistrate's findings of fact and may only examine the legal conclusions drawn from those facts"); *Forth v. Gerth*, 10th Dist. Franklin No. 05AP-576, 2005-Ohio-6619, ¶ 9, quoting *Carter v. Le*, 10th Dist. Franklin No. 05AP-173, 2005-Ohio-6209, at ¶ 11 ("'In the absence of a transcript, the

trial court is required to accept the magistrate's findings of fact. Therefore, the trial court could examine only the legal conclusions drawn from those facts.'"); *Farmers Mkt. Drive-In Shopping Centers, Inc. v. Magana*, 10th Dist. Franklin No. 06AP-532, 2007-Ohio-2653, ¶ 27-28.

{¶16} Other Ohio appellate districts also have determined that, absent a transcript or affidavit, a trial court is limited to a review of a magistrate's conclusions of law. *See, e.g.*, *Welch v. Prompt Recovery Servs.*, 9th Dist. Summit No. 27175, 2015-Ohio-3867, ¶ 10 ("the trial court correctly concluded that it was bound by the magistrate's findings of fact, because Appellants failed to provide a transcript of the proceedings before the magistrate, or a proper affidavit in place of a transcript"); *Wade v. Wade*, 113 Ohio App.3d 414, 418, 680 N.E.2d 1305 (11th Dist.1996) ("absent a transcript or appropriate affidavit as provided in the rule, a trial court is limited to an examination of the referee's conclusions of law and recommendations, in light of the accompanying findings of fact only unless the trial court elects to hold further hearings").

{¶17} Mindful of the foregoing law, the court examines Mezey's objections.

**C. Legal authority exists to support a view that an employer's termination of an employee for retaining legal counsel violates the public policy of Ohio.**

{¶18} In her objections, Mezey does not challenge the magistrate's conclusion of law that discharging an employee for consulting an attorney may serve as a basis for the public policy exception to the common law employment-at-will doctrine. *See* Objections at 12 (indicating that the magistrate "correctly noted that discharging an employee for consulting an attorney may be the basis for * * * a cause of action [for wrongful discharge in violation of public policy]").

{¶19} Upon review, the court determines that there is authority to support a view that under Ohio law an employer's discharge of an employee for consulting an attorney constitutes a cause of action for wrongful discharge in violation of public policy. In *Simonelli v. Anderson Concrete Co.*, 99 Ohio App.3d 254, 259, 650 N.E.2d 488 (10th

Dist.1994), finding persuasive the reasoning contained in *Thompto v. Coborn's Inc.*, 871 F.Supp. 1097 (N.D.Iowa 1994), the Tenth District Court of Appeals concluded that "the act of firing an employee for consulting an attorney could serve as the basis for a public policy exception to the common-law employment-at-will doctrine." And three years later the First District Court of Appeals held that "it is repugnant to the public policy of this state for employers to terminate employees for exercising their right to consult a lawyer. The courthouse door must be open to the people of Ohio, and it is not ajar when citizens may be fired for entering." *Chapman v. Adia Servs.*, 116 Ohio App.3d 534, 544, 688 N.E.2d 604 (1st Dist.1997). Additionally, a federal district court sitting in Ohio has stated: "The Court finds no question that it is against the clear public policy of the state of Ohio for an employer to terminate an employee for retaining legal counsel." *Kulick v. Ethicon Endo-Surgery, Inc.*, 803 F.Supp.2d 781, 788-789 (S.D.Ohio 2011), citing *Simonelli, supra*.

{¶20} Thus, controlling and persuasive authority exists to support the notion that an employer's discharge of an employee for retaining legal counsel violates the public policy of Ohio and the act of terminating an employee for consulting an attorney may constitute a cause of action for wrongful discharge in violation of public policy.

### D. Mezey challenges the magistrate's factual findings relative to her claim of wrongful discharge in violation of public policy.

{¶21} In his decision, the magistrate determined that, as a general rule, the common law doctrine of employment at will governs employment relationships in Ohio. After listing the elements of a wrongful-discharge-in-violation-of-public-policy claim, and citing to authority for the proposition that it is against Ohio public policy for an employer to terminate an employee for retaining legal counsel, Magistrate Renick stated:

> Although plaintiff contends that the termination of her employment was motivated by her decision to retain legal counsel, plaintiff failed to prove that Director Goodman terminated her position because her attorney sent him a letter demanding an appointment to a full-time

position.  Furthermore, [Lyn Tolan, Chief of Communications and Policy] made the recommendation to terminate plaintiff's employment and *Tolan's testimony that she was not aware that plaintiff had retained legal counsel was credible*.  The evidence shows that the job audit of the Film Office, which reviewed both [Pat Barker's[1]] and plaintiff's positions, began before the initial demand letter arrived at DSA.  Plaintiff represents that the first letter to Goodman was sent by regular mail on June 11, 2013, the same date that HR department announced the audit of the departments which were under Tolan's direction.  (Plaintiff's Exhibits 22 and 38.)  The court finds that plaintiff failed to establish that Tolan had any knowledge of either the letter or plaintiff's decision to retain an attorney to address her employment status when she recommended the termination of her position.

Tolan explained that she recommended terminating the employment of both Barker and plaintiff based upon her assessment that they had different ideas for the Film Office and that they did not appear interested in "moving forward."  Tolan testified that she became concerned that Barker and plaintiff did not want to participate in Tolan's vision for the Film Office.  Specifically, Tolan testified that the proposal to raise application fees did not line up with the goals of the administration.  Tolan stated that plaintiff talked to her on multiple occasions about her proposal to raise application fees to provide funds for plaintiff's full-time salary and staff.  According to Tolan, plaintiff was spending more time on "kingdom building" than focusing on tax credit applications.  The court notes that Tolan's testimony regarding her emphasis on the tax credit program as consistent with the direction she provided to plaintiff in her August 19, 2013 email.  (Plaintiff's Exhibit 47.)  Tolan was also critical of the time and expense that was spent on plaintiff's traveling.  Tolan testified that she had no doubt that plaintiff was interested in creating a full-time job for herself by conducting the activities she was interested in rather than focusing on [Ohio Motion Picture Tax Credit] administration.

The evidence shows that plaintiff had extensive experience in the film industry and that she was a capable employee.  However, the court is convinced that Tolan believed that Barker and plaintiff did not share her vision for the Film Office and that they were at least somewhat resistant to

---

[1]According to the magistrate, Pat Barker was employed by Ohio Development Services Agency from October 2010 to October 2013.  She initially served as the Assistant Director of Tourism and was later promoted to Interim Director of Tourism in June 2011.  (Magistrate's Decision at 2.)

Tolan's direction. Although plaintiff contends that Tolan's stated reasons for terminating her employment was a "sham," the court finds that Tolan's testimony regarding her decision to terminate plaintiff's employment was credible.

The general rule is that the court may not substitute its judgment for that of the employer and may not second-guess the business judgments of employers regarding personnel decisions. *Wissler v. Ohio Dept. of Job & Family Servs.,* 10th Dist. No. 09AP-569, 2010-Ohio-3432, ¶ 27. Based upon the testimony and evidence presented at trial, the court concludes that defendant had a legitimate overriding business justification for its decision to terminate plaintiff's employment. Accordingly, the court finds that plaintiff has failed to prove by a preponderance of the evidence her claim for wrongful termination in violation of public policy.

(Emphasis added.) (Magistrate's Decision at 6-8.)

### 1. Objection No. 1

{¶22} In objection No. 1, Mezey maintains that Lyn Tolan's direct testimony that she did not know about Mezey's legal claims is undermined by the contents of a letter from ODSA's counsel. (Objections at 12.) By objection No. 1, Mezey takes issue with the magistrate's statement: "Tolan's testimony that she was not aware that plaintiff had retained legal counsel was credible." (Magistrate's Decision at 6.) In support, Mezey draws the court's attention to plaintiff's exhibit No. 59.

{¶23} Plaintiff's exhibit No. 59 is a copy of letter dated July 24, 2013 from Diane M. Lease, Chief Legal Counsel of ODSA, to Mezey's counsel, Julie C. Ford, that contains the notation "RE: Gail Mezey Employment Status." In this letter, Lease thanked Ford for her understanding in allowing her to review "this issue" and respond to Ford's previous correspondence. With the letter, Lease apparently included enclosures such as Mezey's "Personnel Action," which supposedly showed that Mezey was appointed as an intermittent employee, Mezey's acceptance letter, and a portion of ODSA's employment handbook. The letter states, "Upon Lyn Tolan assuming management of Gail, Lyn spoke with Gail and explained that her hours must be

consistent with the conditions of her employment and management's direction." Lease informed Ford that "we cannot accommodate the request for permanent employment. In the meantime, I would suggest that you review this with Gail so that she fully understands the position she maintains at DSA as an intermittent employee who is now managed by Ms. Tolan." The letter indicates that a copy was sent to Director Goodman and Lynn Tolan as it contains a notation stating:

{¶24} cc:    Director Goodman
        i. Lyn Tolan

{¶25} The court determines that plaintiff's exhibit No. 59—that was admitted into evidence—when viewed with plaintiff's exhibit No. 38 (Mezey's attorney's demand letter of June 11, 2013)—that was admitted into evidence—calls into question (1) Tolan's apparent testimony that she was not aware that Mezey had retained legal counsel and (2) the magistrate's credibility determination regarding Tolan's apparent testimony. Several points lead to this view:

c. First, exhibit No. 38 is a demand letter sent by an attorney who, on June 11, 2013, on behalf of Mezey, wrote to Director Goodman. It is manifest that as of June 2013 Mezey had retained legal counsel.

d. Second, exhibit No. 59 constitutes a July 2013 written response by ODSA to Mezey's attorney's demand letter. Exhibit No. 59 establishes that a copy of Lease's letter was to be sent to Lyn Tolan as demonstrated by the "cc" notation on the letter. It is reasonable to conclude that Tolan received the letter. And, as the letter was between two attorneys—one of whom represented Mezey—it also is reasonable that Tolan had knowledge that Mezey had retained an attorney.

These circumstances serve to rebut the magistrate's finding that Mezey failed to establish that Tolan did not have knowledge that Mezey had retained legal counsel. And they also may call into question the magistrate's credibility determination about Tolan's apparent trial testimony.

**{¶26}** However, because Mezey has failed to submit a transcript or affidavit of evidence to support her challenge to the magistrate's factual findings, in accordance with precedent of the Tenth District Court of Appeals, the court concludes that it "must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions." *Law Offices of James P. Connors v. Cohn*, 10th Dist. Franklin No. 08AP-1031, 2009-Ohio-3228, ¶ 23; *see Ross v. Cockburn*, 10th Dist. Franklin No. 07AP-967, 2008-Ohio-3522, ¶ 5; *Forth v. Gerth*, 10th Dist. Franklin No. 05AP-576, 2005-Ohio-6619, ¶ 9; *Carter v. Le*, 10th Dist. Franklin No. 05AP-173, 2005-Ohio-6209, at ¶ 11; *Farmers Mkt. Drive-In Shopping Centers, Inc. v. Magana*, 10th Dist. Franklin No. 06AP-532, 2007-Ohio-2653, ¶ 27-28.

**{¶27}** Of significance therefore is (1) whether the magistrate's conclusion that Mezey failed to prove that Director Goodman terminated her position because Mezey's attorney sent him a demand letter and (2) whether ODSA had a legitimate overriding business justification for its decision to terminate Mezey's employment are against the manifest weight of the evidence.

**{¶28}** In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), the Ohio Supreme Court discussed the concept of weight of the evidence, stating: "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, *supra*, at 1594." Since the Ohio Supreme Court issued *Thompkins*, it has recognized that the *Thompson* standard of review for manifest weight of the evidence applies in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-23.

{¶29} The court finds that Mezey's exhibit No. 38 establishes that a copy of Mezey's attorney's letter of June 2013 was sent to Director Goodman. However, the court finds that Mezey's exhibit No. 38 does not by itself necessarily establish that Goodman read the letter, that he based a decision to terminate Mezey's employment because Mezey retained an attorney, or that he based a decision to terminate Mezey's employment because Mezey's attorney sent a demand letter. Such conclusions hinge on an inference based on an inference. Without any other supporting facts—i.e., facts supported by a transcript of the evidence submitted to the magistrate—the court determines that such a stacking of inferences is ineffective to undermine the magistrate's determination that Mezey "failed to prove that Director Goodman terminated her position because her attorney sent him a letter demanding an appointment to a full-time position." (Magistrate's Decision at 6.) *See Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 130 N.E.2d 820 (1955), paragraph one of the syllabus ("An inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in by a jury").

{¶30} Additionally, although exhibit No. 59 rebuts the magistrate's finding that Mezey failed to establish that Tolan did not have knowledge that Mezey had retained legal counsel, such a rebuttal does not necessarily mean that the magistrate's determination that ODSA had a legitimate overriding business justification for its decision to terminate Mezey's employment is against the manifest weight of the evidence. In *City of Hilliard v. First Indus., L.P.*, 165 Ohio App.3d 335, 2005-Ohio-6469, 846 N.E.2d 559, ¶ 30 (10th Dist.), the Tenth District Court of Appeals explained: "A judgment is not against the manifest weight of the evidence merely because inconsistent evidence was presented. *State v. Raver*, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21." And in *Raver* at ¶ 21, the Tenth District Court of Appeals noted: "'While the jury may take note of the inconsistencies and resolve or discount

them accordingly, see [*State v.*] *DeHass* [1967, 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' *State v. Nivens* (May 28, 1996), Franklin App. No. 95AP-1236.  A jury, as finder of fact, may believe all, part, or none of a witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 67."

{¶31} In this case, the magistrate—as the trier-of-fact as to all of the evidence before him—could take note of any inconsistencies raised by plaintiff's exhibit No. 59—and resolve or discount the inconsistencies accordingly.

{¶32} Upon independent review, the court determines that Mezey's Objection No. 1 should be overruled.

## 2.  Objection No. 2

{¶33} In objection No. 2, Mezey contends that ODSA's discharge of her was based on pretext, citing in support of this contention, among other things, various trial testimony.  *See, e.g.*, Objections at 14, 15, 16 ("More to the point, Ms. Tolan herself equivocated or even backed down from many of these allegations in her trial testimony;" "at trial [Tolan] acknowledged that she was Ms. Mezey's supervisor for only approximately three months * * *;" "Both Ms. Mezey and Ms. Barker testified that the concept of increasing the tax credit application fees was discussed many times * * *").

{¶34} As Mezey has not filed a transcript to support her view of the trial evidence or an affidavit of the evidence because a transcript is unavailable, the court finds Mezey's characterization of the trial testimony is less than convincing.  Absent a transcript of the evidence submitted to the magistrate or affidavit of evidence in relation to her claim that ODSA terminated her employment based on pretext, the court determines that the magistrate's findings as stated in his decision at 7 related to Tolan's testimony—namely, that Tolan believed that "Barker and plaintiff did not share her vision for the Film Office and that they were at least somewhat resistant to Tolan's direction.  * * * [T]he court finds that Tolan testimony regarding her decision to terminate

plaintiff's employment was credible"—should be adopted. The magistrate was best able to view any witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the testimony offered to him. *See In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 45 ("It is well settled that "'[t]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."'" *State v. Amburgey* (1987), 33 Ohio St.3d 115, 117, 515 N.E.2d 925, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273").

{¶35} The court determines that Mezey's Objection No. 2 is not persuasive.

## IV. Conclusion

{¶36} Wherefore, upon independent review as to the objected matters, the court determines that Mezey's objections of October 4, 2016 to the magistrate's decision of September 20, 2016 should be overruled. The court finds that the magistrate has properly determined the factual issues and appropriately applied the law related to Mezey's claim of wrongful termination in violation of public policy. The court further determines that the magistrate's decision and recommendation should be adopted as its own. Judgment should be rendered in favor of ODSA. Court costs should be assessed against Mezey.

_____
PATRICK M. MCGRATH
Judge

[Cite as *Mezey v. Ohio Dev. Servs. Agency*, 2016-Ohio-8578.]

| | |
|---|---|
| GAIL MEZEY | Case No. 2015-00110 |
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEVELOPMENT SERVICES AGENCY | |
| Defendant | |

**{¶37}** For the reasons set forth in the decision filed concurrently herewith, upon independent review as to the objected matters, the court OVERRULES plaintiff's objections. The court finds that the magistrate has properly determined the factual issues and appropriately applied the law. The court adopts the magistrate's decision and recommendation as its own. Judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Julie C. Ford
111 West First Street, Suite 1100
Dayton, Ohio 45402-1156

Lee Ann Rabe
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed December 2, 2016**
**Sent to S.C. Reporter 1/10/17**